# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| AMANDA PHILHOWER,<br><br>              Plaintiff,<br><br>v.<br><br>EXPRESS RECOVERY SERVICES, INC. &<br>EDWIN B. PARRY, P.C.,<br><br>              Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:12-cv-01193-DN<br>District Judge David Nuffer |

The parties have filed cross-motions for summary judgment. Summary judgment is granted as to Defendant Express Recovery Services's motion. Summary judgment is granted in part and denied in part as to Defendant Edwin B. Parry's motion and Plaintiff Amanda Philhower's motion.

SUMMARY OF FACTS ............................................................................................................. 2
SUMMARY OF CLAIMS ........................................................................................................ 3
UNDISPUTED FACTS ............................................................................................................ 5
DISCUSSION ........................................................................................................................... 8
    A.     Summary Judgment Standard ............................................................................... 8
    B.     Defendants' Motions for Summary Judgment as to Liability for Overshadowing. 9
            FDCPA Requirements .......................................................................................... 9
            There Was No Overshadowing .......................................................................... 11
    C.     Defendants' Motion for Summary Judgment as to Liability for Filing Suit to
            Collect a Debt Not Owed .................................................................................... 12
    D.     Cross-Motions for Summary Judgment as to Parry's Liability for False
            Representation in the Initial Disclosures ............................................................ 16
    E.     Cross-Motions for Summary Judgment as to Parry's Liability for Threatening to
            Proceed to Trial to Collect Dr. Maret's Account ............................................... 19
    F.     Philhower's Motion for Summary Judgment as to Parry's Entitlement to the
            Defense of Bona Fide Error ................................................................................ 21
Remaining Claims .................................................................................................................. 22
ORDER .................................................................................................................................... 23

## SUMMARY OF FACTS

This case arises out of debt allegedly owed by Plaintiff Amanda Philhower ("Philhower") for medical services provided by Dr. Leigh A. Maret ("Dr. Maret") between April 2 and August 27, 2008. Dr. Maret assigned a $117.19 balance to Defendant Express Recovery Services ("Express") for collection in September of 2011. Dr. Maret's account was one of three in Philhower's name upon which Express was attempting to collect.

Express made a number of failed attempts to collect the three accounts. Express claims that it sent an initial letter to Philhower on October 3, 2011. She denies having received that letter and "does not believe it was sent."[1] On October 7, 2011, Philhower called Express to discuss the accounts. During that phone call, Philhower acknowledged having received services from Dr. Maret but claimed that her bill with Dr. Maret had been paid in full. Express offered to send Philhower a summary of the account information, including charges, credits, and Dr. Maret's contact information. Express sent this information on October 12, 2011. Philhower did not respond.

Express called Philhower to discuss the accounts on November 7, 2011. Philhower again denied that she owed Dr. Maret any balance.

On November 28, 2011, Express engaged an attorney, Defendant Edwin B. Parry ("Parry"), to review the account. Parry immediately drafted a letter – dated November 29, 2011 – regarding the three accounts in Philhower's name. Philhower acknowledges receiving that letter on or after December 2, 2011, but cannot recall the precise date. Philhower did not respond to this letter.

---

[1] Plaintiff's Response to Defendant Express Recovery Services, Inc.'s Motion for Summary Judgment (Philhower's Opposition to Express's Motion) at 3, docket no. 30, filed Oct. 17, 2013.

After confirming with Dr. Maret that the $117.19 was owed, Express authorized suit to collect the three accounts. Parry served Philhower with a summons and complaint on January 2, 2012. Parry listed Dr. Maret as a witness on initial disclosures filed on January 27, 2012, but Dr. Maret was not listed as a witness on Parry's "Trial Witness and Exhibit" list filed on June 11, 2012. On the day trial was set to begin, July 11, 2012, the claim for collection of Dr. Maret's account was voluntarily withdrawn. According to Philhower, Parry knew at least as early as June 6, 2012, that no one from Dr. Maret's office would be available to testify. As a result, Philhower alleges that Parry also knew that the claim would have to be withdrawn. Parry did not give Philhower any advance warning that the claim would be withdrawn.

## SUMMARY OF CLAIMS

Philhower's sole cause of action arises under 15 U.S.C. § 1692k, which imposes liability on debt collectors for violations of the Fair Debt Collection Practices Act[2] ("FDCPA").[3] Philhower alleges that both defendants violated various provisions of the FDCPA in attempting to collect Dr. Maret's account.[4]

The complaint is unclear as to which defendant is alleged to have violated which provisions of the FDCPA. The only paragraphs of the complaint that explicitly allege violations by Express are paragraphs ten and fourteen. Paragraph ten alleges that Express and Parry "overshadowed"[5] disclosures required by the FDCPA by filing suit prior to the expiration of a statutory dispute period.[6] Paragraph fourteen alleges that Express and Parry falsely represented

---

[2] 15 U.S.C. §§ 1692–1692p (2012).

[3] Amended Complaint at 4–5, docket no. 25, filed May 7, 2013.

[4] *Id.*

[5] 15 U.S.C. §§ 1692g(b).

[6] Amended Complaint at 2, ¶ 10, docket no. 25.

the character, amount, or legal status of Philhower's debt by filing suit to collect a debt that she did not owe.[7]

The remaining allegations in the complaint mention only Parry's conduct. Though Parry is acting as Express's attorney, Philhower does not allege facts that would render Express liable for its attorney's conduct.[8] The remaining claims are apparently alleged only against Parry. First, Philhower claims that Parry used false representations and deceptive practices by sending her a letter stating that Parry would wait thirty days prior to filing suit when he did not intend to do so, and that Philhower had certain rights that Parry did not believe she had.[9] The paragraph that includes this allegation mentions neither Parry nor Express, referring only to conduct by "Defendant."[10] However, there is no dispute that Parry sent the letter to which the allegation refers.[11] Second, Philhower alleges that Parry made false representations by stating that he intended to call someone from Dr. Maret's office as a witness at trial when he did not intend to do so.[12] Third, Philhower alleges that Parry threatened to take an action that he did not intend to take when he represented that the claim for collection of Dr. Maret's account would go to trial well after he knew that the claim would have to be withdrawn.[13]

The parties filed cross-motions for summary judgment. Express moved for summary judgment as to its liability for overshadowing the notices required by the FDCPA and for

---

[7] *Id.* at 4, ¶ 14.

[8] *See, e.g.*, *Ditty v. CheckRite, Ltd., Inc.*, 973 F. Supp. 1320, 1333–35 (D. Utah 1997) (discussing facts that must be shown to establish vicarious liability of a debt collector for conduct of its attorney).

[9] Amended Complaint at 2–3, ¶ 11, docket no. 25.

[10] *Id.*

[11] Defendant's (Express) Motion for Summary Judgment (Express's Summary Judgment Motion) at 7, docket no. 29, filed Sept. 17, 2013; Philhower's Opposition to Express's Motion at 3–4, docket no. 30.

[12] Amended Complaint at 3–4, ¶ 13, docket no. 25, filed May 7, 2013.

[13] *Id.* at 3, ¶ 12.

4

misrepresenting Philhower's debt by filing suit.[14] Parry joined Express's motion.[15] Like Philhower's complaint, Parry's motion is not a model of clarity. However, it appears that Parry intended to move for summary judgment as to two additional claims: that Parry falsely represented that Dr. Maret would testify and that Parry threatened to proceed to trial though he knew the claim to collect Dr. Maret's account would have to be withdrawn.[16]

Philhower moved for partial summary judgment as to Parry's liability for falsely representing that someone from Dr. Maret's office would testify and for failing to dismiss the claim until well after Parry knew the claim would be dropped.[17] Philhower also moved for summary judgment as to Parry's entitlement to assert the affirmative defense of bona fide error with respect to those claims. According to Philhower, Parry waived that defense by failing to assert it in his answer to the complaint.

**UNDISPUTED FACTS**[18]

The following facts are not in dispute for purposes of the motions under consideration:

1.      Express was assigned an account from Dr. Maret for collection on or about September 29, 2011.

2.      The account was for medical services provided to Philhower from April 2, 2008, through August 27, 2008.

3.      Express had three active accounts it was seeking to collect from Philhower.

---

[14] Express's Summary Judgment Motion at 3–6, docket no. 29.

[15] Joinder in Express Recovery Services [sic] Motion for Summary Judgment and Defendant Edwin B. Parry's Motion for Summary Judgment and Response to Plaintiff's Motion for Partial Summary Judgment (Parry's Summary Judgment Motion) at 1–2, docket no. 35, filed Nov. 14, 2013.

[16] *Id.* at 4–5.

[17] Plaintiff's Motion for Partial Summary Judgment against Defendant Edwin B. Parry, P.C. (Philhower's Summary Judgment Motion) at 4–5, docket no. 33, filed Oct. 31, 2013.

[18] Except whether otherwise noted, the following facts are found in Express's Summary Judgment Motion at 7–10, docket no. 29 and Philhower's Opposition to Express's Motion at 3–5, docket no. 30.

4.        The account number for the account assigned from Dr. Maret was 3937334.

5.        Philhower called Express on October 7, 2011, to discuss the account.

6.        During the phone call of October 7, 2011, Philhower acknowledged the account but believed the debt had been paid in full.

7.        During the phone call of October 7, 2011, Express informed Philhower it would mail her a copy of the bill that shows payments and charges and that she can review the bill and follow up if she sees something missing.

8.        Express mailed Philhower a copy of the Patient Statement that contains information as to the name, address, and phone number of the underlying creditor on October 13, 2011.

9.        Express called Philhower on November 7, 2011, to discuss the account.

10.      During the phone call of November 7, 2011, Philhower alleged that the account had been paid in full and she did not owe a balance to Dr. Maret.

11.      Philhower never disputed the account in writing with Express.

12.      On November 28, 2011, Express engaged Parry to review the account and file suit if necessary.

13.      Parry sent Philhower an initial letter dated November 29, 2011, regarding all three accounts upon which Express was attempting to collect.

14.      Philhower's home address is roughly 35-40 miles from Parry's office address.

15.      Philhower remembers receiving the letter from Parry's office on or after December 2, 2011, but cannot recall the exact date.

16.      Philhower never disputed the account in writing with Parry's office.

17.     Express implemented a policy and procedure requiring Express's employees to seek and obtain written confirmation of the debt from the underlying creditor before having their attorneys file a lawsuit.

18.     Express ensured that each of its employees who deal with collection accounts was trained to follow this policy and procedure.

19.     Express's policy and procedure in this regard was adopted to avoid filing a lawsuit on a debt that was not due and owing.

20.     On November 30, 2011, Express sent Dr. Maret correspondence recommending litigation and sought further confirmation that the account was due and owing.

21.     Dr. Maret's office confirmed that the amount of $117.19 was due and owing from Philhower on December 10, 2011.

22.     Based upon the written verification it received from Dr. Maret's office on December 10, 2011, Express believed at the time it authorized Parry to file suit that Philhower owed $117.19.

23.     Parry's office served Philhower with a lawsuit on January 2, 2012.

24.     On January 27, 2012, Parry filed initial disclosures indicating that Parry intended to utilize Dr. Maret as a witness in the case.[19]

25.     Prior to January 27, 2012, Parry made no attempt to ensure that Dr. Maret would be available to testify at trial before including her claim in the lawsuit.[20]

26.     On at least two occasions after the commencement of suit – around April 24 and May 21, 2012 – Parry's office contacted Dr. Maret's office to confirm that the amount sought was still being claimed as due and owing.[21]

---

[19] Philhower's Summary Judgment Motion at 5, docket no. 33. Parry did not respond to this allegation.

[20] *Id.*

27.     Parry filed and served "Trial Witness and Exhibit Disclosures" on Philhower on or about June 12, 2012 – one month before trial – that failed to list Dr. Maret as a witness.[22]

28.     During the course of the litigation Parry repeatedly requested that Philhower produce any documentation supporting her claim that her bill with Dr. Maret had been paid. Philhower represented that she had such information but refused to provide it to Parry for review.[23]

29.     Parry did not issue a subpoena to Dr. Maret to testify.[24]

30.     Parry dropped his claim against Philhower on the day of the trial, July 11, 2012, without any prior notice.[25]

## DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[26] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[27] In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[28]

---

[21] Plaintiff's Reply to Defendant Edwin B. Parry, P.C.'s Response to Plaintiff's Motion for Summary Judgment (Philhower's Reply) at 3, docket no 42, filed Dec. 2, 2013.

[22] Philhower's Summary Judgment Motion at 4, docket no. 33; Memorandum in Response to Plaintiff's Motion for Partial Summary Judgment against Edwin B. Parry, P.C. (Parry's Opposition) at 3, docket no. 37, filed Nov. 15, 2013.

[23] Philhower's Reply at 2, docket no. 42.

[24] Philhower's Summary Judgment Motion at 4, docket no. 33. Parry did not respond to this allegation.

[25] *Id.*

[26] Fed. R. Civ. P. (56)(a).

[27] *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998).

[28] *Id.*

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[29] When the movant does not bear the ultimate burden of persuasion at trial, it can make such a prima facie demonstration by "pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."[30] If the moving party carries this initial burden, the nonmovant "may not simply rest upon it pleadings," but must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[31]

### B. Defendants' Motions for Summary Judgment as to Liability for Overshadowing

Philhower claims that filing suit before the expiration of a statutory dispute period improperly overshadows notice required by the FDCPA.[32] Defendants claim that summary judgment is appropriate because there is no evidence that in this case the summons and complaint were served before the expiration of that period.[33] Philhower voluntarily withdrew the claim against Express.[34] This order determines that Parry is entitled to summary judgment with respect to the claim for overshadowing the notice required by the FDCPA.

### FDCPA Requirements

The FDCPA requires that debt collectors send consumers a written notice containing the amount of debt, the name of the creditor to whom the debt is owed, and information regarding

---

[29] *Id.* at 670–71.

[30] *Id.* at 671.

[31] *Id.*

[32] Amended Complaint at 2, ¶ 10, docket no. 25.

[33] Express's Summary Judgment Motion at 11–13, docket no. 29; Parry's Summary Judgment Motion at 1–2, docket no. 35.

[34] Philhower's Reply to Express's Motion at 5, docket no. 30.

the consumer's right to dispute the validity of the debt.[35] The notification must state that the consumer may dispute the validity of the debt and request the name and contact information of the original creditor within thirty days of receiving the notice.[36] If the consumer disputes the validity of the debt in writing within that thirty-day period, the debt collector must obtain verification of the debt and mail that verification to the consumer.[37] If the consumer requests information regarding the original creditor within that thirty-day period, the debt collector must provide it.[38]

A debt collector may engage in collection activities during this thirty-day period. The debt collector is obligated to cease collection activities within the thirty-day period only if the consumer disputes the validity of the debt or requests information regarding the original creditor in writing.[39] Even then, the debt collector must cease collection activities only until the information that the consumer requested is provided.[40] However, "any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."[41]

---

[35] 15 U.S.C. § 1692g(a)(1)–(3) (2012).

[36] *Id.* § 1692g(a)(4)–(5).

[37] *Id* § 1692g(b).

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.*

Collections activities overshadow the notifications when the activities are likely to confuse the "least sophisticated consumer" regarding their rights to request validation of the debt and the information regarding the original creditor.[42]

### There Was No Overshadowing

Philhower was served with a summons and complaint on January 2, 2012. Because there is no evidence in the record that Philhower was aware of the suit prior to the service of the summons and complaint, the question is whether those documents could have confused her as to her rights under the FDCPA. This would only be the case if the documents were served within the thirty-day dispute period. There is nothing confusing – even to the least sophisticated consumer – about a summons and complaint served *after* the period in which the consumer has the right to dispute the debt. That dispute period begins on the day the consumer receives the notifications.[43]

The parties do not agree on the date the dispute period began. Express claims that it sent a letter to Philhower on October 3, 2011, that included the required notices.[44] If she did receive such a letter, the thirty-day dispute period expired long before the summons and complaint were served on January 2, 2012. Philhower claims never to have received this letter and that she "does not believe that it was sent."[45] While Express submitted some evidence that a letter was sent on that date, Express did not include a copy of the alleged letter with its summary judgment motion

---

[42] *See*, *e.g.*, *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996); *Solomon v. HSBC Mortg. Corp. (USA)*, CIV-09-200-C, 2012 WL 1066141, at *3 (W.D. Okla. Mar. 29, 2012) *aff'd sub nom. Solomon v. Baer & Timberlake, P.C.*, 504 F. App'x 702 (10th Cir. 2012).

[43] 15 U.S.C. § 1692g(a) (noting that consumers must be informed of their right to dispute the debt "within thirty days after receipt of the notice").

[44] Express's Summary Judgment Motion at 10, docket no. 29.

[45] Philhower's Opposition to Express's Motion at 3, docket no. 30.

or any evidence that the letter included the notices required by the FDCPA. As a result, there is a genuine dispute whether a letter that included the required notices was sent on October 3, 2011.

However, that dispute is not material. Even assuming that Express did not send a letter to Philhower on October 3, 2011, Philhower agrees that Parry sent a letter, dated November 29, 2011, that included the notifications required by the FDCPA.[46] According to Philhower, that letter did not arrive before December 2, 2011.[47] Parry and Express contend that the letter should have arrived earlier.[48] Even if the letter arrived on December 2, 2011, however, the thirty-day dispute period expired prior to the service of the summons and complaint on January 2, 2012. Philhower does not claim that the letter arrived after December 2, 2011, and has not provided any evidence to suggest that it did so.

There is no evidence to suggest that the summons and complaint were served within the thirty-day dispute period. No reasonable fact finder could conclude from this record that Defendants' suit against Philhower overshadowed the notices required by the FDCPA. Parry is entitled to summary judgment.

### C. Defendants' Motion for Summary Judgment as to Liability for Filing Suit to Collect a Debt Not Owed

Debt collectors are prohibited from making "false representation of the character, amount, or legal status of any debt . . . ."[49] Philhower alleges that she did not owe any debt to Dr. Maret.[50] As a result, she claims that the suit filed by Parry on behalf of Express falsely

---

[46] *Id.* at 4–5.

[47] *Id.* at 4.

[48] Express's Summary Judgment Motion at 12, docket no. 29.

[49] 15 U.S.C. § 1692e(2)(A).

[50] Philhower's Opposition to Express's Motion at 5, docket no. 30.

represented the character, amount, or legal status of a debt.[51] Defendants claim that summary judgment is appropriate because, if there was such a violation, it was a bona fide error for which they are not liable under the FDCPA.[52] Defendants are correct.

The FDCPA provides that "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."[53]

It is generally a question of fact for a jury whether a violation was intentional.[54] In this case, the specific error alleged is the representation that any debt at all was owed by Philhower to Dr. Maret. However, there is no dispute that Express believed that Philhower owed the debt at the time that it authorized Parry to file suit.[55] If there was a misrepresentation, it is undisputed that it was an error. As a result, the application of the bona fide error defense turns on whether Defendants "actually employed or implemented procedures to avoid errors" and "whether the procedures were reasonably adapted to avoid the specific error at issue."[56]

Debt collectors are not required to conduct "an independent investigation of the debt referred for collection."[57] Instead, a debt collector who "reasonably relies on the debt reported by

---

[51] Amended Complaint at 4, ¶ 14, docket no. 25.

[52] Express's Summary Judgment Motion at 17–21, docket no. 29; Parry's Summary Judgment Motion at 1–2, docket no. 35.

[53] 15 U.S.C. § 1692k(c).

[54] *Johnson v. Riddle*, 443 F.3d 723, 728 (10th Cir. 2006).

[55] Express's Summary Judgment Motion at 10, docket no. 29; Philhower's Opposition to Express's Motion at 4, docket no. 30.

[56] *Johnson,* 444 F.3d at 729.

[57] *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992) (internal quotation marks omitted).

the creditor . . . will not be liable for any errors."[58] Philhower clams that Defendants did not

reasonably rely upon Dr. Maret's account information.[59]

In support of the claim that Defendants unreasonably relied on Dr. Maret's statements,

Philhower points to two cases.[60] In *Clark v. Capital Credit & Collection Services, Inc.*, the Ninth

Circuit Court of Appeals found a material question of fact whether debt collectors reasonably

relied upon information obtained from the underlying creditor.[61] In doing so, however, the court

emphasized evidence in possession of the debt collector suggesting that the creditor was not

reliable. The debt collector knew that the creditor had experienced "serious bookkeeping

difficulties and problems," expressed concern over inconsistencies between the amount the

creditor was claiming and the itemized statements that the creditor provided, and had previously

been involved in litigation due to reliance on the creditor's statements.[62] There is no similar

evidence pointing to Dr. Maret's unreliability.

In *Owen v. I.C. Systems, Inc.*, the Eleventh Circuit Court of Appeals held that a debt

collector unreasonably relied upon the statements of the underlying creditor in attempting to

collect interest charges.[63] The court emphasized three critical facts.  First, the debt collector

made no attempt to verify the accuracy of the particular debt at issue with the underlying

creditor.[64] Instead, the debt collector relied upon a contract requiring the creditor to assign only

---

[58] *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1177 (9th Cir. 2006); *see also Solomon v. Baer & Timberlake, P.C.*, 504 F. App'x 702, 705 (10th Cir. 2012) (unpublished) (holding that a debt collector "could not be held liable for any alleged misrepresentations about the amount of the debt because it reasonably relied upon information from its client, which it is permitted to do").

[59] Philhower's Opposition to Express's Motion at 6–8, underline docket no. 30.

[60] *Id.*

[61] *Clark*, 460 F.3d at 1177.

[62] *Id.* at 1176.

[63] *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1277 (11th Cir. 2011).

[64] *Id.* at 1275.

accounts that were validly due and owing.[65] According to the court, "[e]mploying a one-time form contract with [the creditor] four years prior and blindly relying on creditors to send only valid debts is a procedure, but it is not one reasonably adapted to avoid the type of erroneous interest charges at issue here."[66] Second, preventing the errors would not have required the debt collector to engage in an independent investigation of the underlying debt.[67] Rather, the errors were simple computational mistakes that would have been evident had the debt collector even briefly reviewed the account statements.[68] Finally, the debt collector did not provide any evidence of internal procedures to avoid the miscalculation of debt amounts.[69]

This case is clearly distinguishable from *Owen*. First, Express is not merely relying upon Dr. Maret's promise to forward only debt that is due and owing. Express specifically inquired as to the validity of the debt at issue in this case. Express obtained a signed statement from Dr. Maret that the balance on the account was due and owing just three weeks prior to authorizing Parry to file suit.[70] Second, because Philhower is alleging that she owed no debt at all to Dr. Maret, the alleged error was discoverable only by engaging in an independent investigation of the validity of the debt. Debt collectors are not required to make such investigations. Finally, Express has a policy and procedure to secure written confirmation of an alleged debt from the underlying creditor prior to authorizing suit.[71]

---

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.*

[70] Express's Summary Judgment Motion at 8, docket no. 29; Philhower's Opposition to Express's Motion at 4, docket no. 30.

[71] Express's Summary Judgment Motion at 8–9, docket no. 29; Philhower's Opposition to Express's Motion at 4, docket no. 30.

Finally, Philhower argues that Defendants' reliance on Dr. Maret was unreasonable because Philhower repeatedly denied that she owed any debt to Dr. Maret.[72] According to Philhower, Express "blindly relied" on Dr. Maret's statements in the face of Philhower's claims not to owe any balance.[73] However, the evidence does not show that Express blindly relied on Dr. Maret's statements. Express provided Philhower with a summary of Dr. Maret's account showing a balance.[74] Philhower did not respond to that information and never disputed the debt in writing.[75] Finally, a consumer's claim not to owe a debt does not alone make it unreasonable for a debt collector to rely on a creditor's representations regarding the validity of the debt.[76]

Defendants reasonably relied upon Dr. Maret's signed statement that the balance was due and owing. Defendants were not required to engage in an investigation as to the validity of the debt. Summary judgment is appropriate as to both defendants.

### D. Cross-Motions for Summary Judgment as to Parry's Liability for False Representation in the Initial Disclosures

The FDCPA prohibits a debt collector from "us[ing] any false representation or deceptive means to collect or attempt to collect any debt . . . ."[77] It also prohibits any debt collector from making a "threat to take any action that cannot legally be taken or that is not intended to be

---

[72] Philhower's Opposition to Express's Motion at 8, docket no. 30.

[73] *Id.*

[74] Express's Summary Judgment Motion at 7, docket no. 29; Philhower's Opposition to Express's Motion at 3, docket no. 30.

[75] Express's Summary Judgment Motion at 7, docket no. 29; Philhower's Opposition to Express's Motion at 3, docket no. 30.

[76] *See, e.g.*, *Reed v. AFNI, Inc.*, 2:09-CV-459 TS, 2011 WL 112430, at *2 (D. Utah Jan. 13, 2011) (holding that when a consumer disputes the validity of a debt, "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt. Debt collectors do not have to vouch for the validity of the underlying debt. Moreover, the FDCPA did not impose upon them any duty to investigate independently the claims presented by the debtor.") (internal quotation marks and alterations omitted); *Poulin v. The Thomas Agency*, 760 F. Supp. 2d 151, 160 (D. Me. 2011) (holding that a consumer's claim not to owe any debt did not imply that it was unreasonable for the debt collector to rely on the creditor's statements).

[77] 15 U.S.C. § 1692e(10) (2012).

taken."[78] Parry served Philhower with a summons and complaint on January 2, 2012,[79] and filed initial disclosures in the suit on January 27, 2012.[80] Those disclosures stated that Parry intended to call a witness from Dr. Maret's office.[81] According to Philhower, "the statement in [Parry's] initial disclosures that [Parry] intended to call a representative from Leigh A. Maret's office to testify" was a false representation.[82] As a result, Philhower claims that it was also a threat to take an action that Parry did not intend to take.[83] Both Philhower and Parry are seeking summary judgment as to Parry's liability.[84] Summary judgment in favor of Parry is appropriate.

The initial disclosures falsely represented that Parry intended to call a representative from Dr. Maret's office as a witness only if Parry did not intend to do so when he filed the initial disclosures. Similarly, Parry only threatened to take an action that he did not intend to take if he did not intend to call a representative from Dr. Maret's office when he filed the initial disclosures.

Philhower points to five facts – all but the first of which is undisputed – to support the claim that Parry did not intend to call a representative from Dr. Maret's office when he filed the initial disclosures. First, Parry knew as of June 6, 2012, that Dr. Maret would not testify.[85] Second, Parry did not issue a subpoena to compel Dr. Maret to testify.[86] Third, Parry did not

---

[78] *Id.* § 1692e(5).

[79] Express's Summary Judgment Motion at 8, docket no. 29; Philhower's Opposition to Express's Motion at 4, docket no. 30.

[80] Philhower's Summary Judgment Motion at 4, docket no. 33.

[81] *Id.*

[82] Amended Complaint at 2–3, ¶ 11, docket no. 25.

[83] *Id.*

[84] Philhower's Summary Judgment Motion at 1–2, docket no. 33; Parry's Summary Judgment Motion at 1–2, docket no. 35.

[85] Philhower's Summary Judgment Motion at 3, docket no. 33.

[86] *Id.*

notify Philhower of his decision to drop the claim until July 11, 2012, the first day of trial.[87] Fourth, Parry's "Trial Witness and Exhibit Disclosures," filed June 12, 2012, did not list Dr. Maret as a witness.[88] Fifth, when the initial disclosures were filed on January 27, 2012, Parry had not made any attempt to ensure that Dr. Maret would testify.[89]

These facts (including the first disputed fact) do not provide evidence from which a reasonable fact finder could conclude that Parry did not intend to call someone from Dr. Maret's office as a witness when the initial disclosures were filed. Instead, the evidence suggests that Parry assumed that someone from Dr. Maret's office would be available to testify and did not have reason to believe otherwise until June 6, 2012.

Dr. Maret confirmed the validity of Philhower's debt and consented to suit just over a month before Parry filed his initial disclosures.[90] Parry claims that he believed that a representative from Dr. Maret's office would testify at trial based on Dr. Maret's confirmation of the debt and consent to suit.[91] Parry could have been more diligent in confirming Dr. Maret's participation, but there is no evidence that he did not intend to call someone from her office as a witness as of that date.

It is undisputed that Parry contacted Dr. Maret on at least two occasions – in April and May of 2012 – to confirm that the debt was still due and owing.[92] There is no evidence that Parry had any reason to believe prior to June, 6, 2012, that no one from Dr. Maret's office would be available to testify. According to Parry and the notes associated with Dr. Maret's account, Parry

---

[87] *Id.*

[88] *Id.* at 4.

[89] *Id.*

[90] Express's Summary Judgment Motion at 8, docket no. 29; Philhower's Opposition to Express's Motion at 4, docket no. 30.

[91] Parry Dep. 27: 12–21, Apr. 29, 2013, docket no. 34-1, filed Oct. 31, 2013.

[92] Philhower's Reply to Parry's Motion at 3, docket no. 42.

contacted Dr. Maret's office on June 4, 2012, to inform Dr. Maret of the trial date and ensure that someone would be available as a witness.[93] Dr. Maret's office returned the call on June 6, 2012, and stated that they "didn't think anyone could be there."[94] The fact that Parry contacted Dr. Maret's office in June of 2012 to notify Dr. Maret of a trial date and arrange for a witness suggests that Parry intended to call someone from Dr. Maret's office as of that date.

To sustain her claim, Philhower must show that Parry did not intend to call Dr. Maret as a witness when the initial disclosures were filed in January of 2012. Philhower has not provided evidence from which a reasonable finder of fact could draw such a conclusion. Summary judgment is granted in favor of Parry as to the claims associated with the filing of the initial disclosures. Philhower's summary judgment motion is denied as to those claims.

### E. Cross-Motions for Summary Judgment as to Parry's Liability for Threatening to Proceed to Trial to Collect Dr. Maret's Account

The FDCPA prohibits a party from "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken."[95] Philhower alleges that Parry threatened to take her to trial to recover Dr. Maret's account, but did not intend to do so.[96] According to Philhower, Parry knew at least by June 6, 2012, that no one from Dr. Maret's office would be available and so the claim for Dr. Maret's account would have to be withdrawn.[97] Parry falsely represented that the claim would go to trial by failing to withdraw it prior to the trial date.[98]

---

[93] Parry Dep. 19:3 – 20:4, docket no. 34-1; Account Notes at ERS000014, lines 55–61, docket no. 34-2, filed Oct. 31, 2013.

[94] Parry Dep. 19:3 – 20:4, docket no. 34-1; Account Notes at ERS000014, lines 55–61, docket no. 34-2.

[95] 15 U.S.C. § 1692e(5) (2012).

[96] Amended Complaint at 3, ¶ 12, docket no. 25.

[97] *Id.*

[98] *Id.*

Philhower points to five facts – all but the first of which is undisputed – to support the claim that Parry threatened to take her to trial to collect Dr. Maret's account, though he knew that the claim would eventually be withdrawn. First, Parry knew as of June 6, 2012, that Dr. Maret would not testify. [99] Second, Parry did not issue a subpoena to compel Dr. Maret to testify. [100] Third, Parry did not notify Philhower of his decision to drop the claim until July 11, 2012, the first day of trial. [101] Fourth, Parry's "Trial Witness and Exhibit Disclosures," filed June 12, 2012, did not list Dr. Maret as a witness. [102] Fifth, when the initial disclosures were filed on January 27, 2012, Parry had not made any attempt to ensure that Dr. Maret would testify. [103]

Philhower's evidence is sufficient to present a genuine dispute as to whether Parry knew as of June 6, 2012, that the claim for Dr. Maret's account would have to be withdrawn. Dr. Maret's office informed Parry on June 6, 2012, that they "didn't think that anyone could be there." [104] Further, Parry's "Trial Witness and Exhibit Disclosures," filed on June 12, 2012, did not include anyone from Dr. Maret's office as a witness. [105] Parry claims that he still believed that someone from Dr. Maret's office might testify. [106] However, a reasonable finder of fact could conclude that Parry knew in early June that no one would be available to testify and the claim would have to be withdrawn.

---

[99] Philhower's Summary Judgment Motion at 3, docket no. 33.

[100] *Id.*

[101] *Id.*

[102] *Id.* at 4.

[103] *Id.*

[104] Parry Dep. 19:3 – 20:4, docket no. 34-1; Account Notes at ERS000014, lines 55–61, docket no. 34-2.

[105] Philhower's Summary Judgment Motion at 4, docket no. 33; Parry's Opposition at 3, docket no. 37.

[106] Parry's Opposition at 4, docket no. 37.

Philhower cited a variety of cases in which courts held that a defendant's litigation conduct amounted to a threat to take an action that the defendant did not intend to take.[107] According to Parry, "[t]he cases cited by the plaintiff are not on point and should not be considered."[108] However, Parry does not make any attempt to distinguish the cases."[109]

Both parties's summary judgment motions as to this claim are denied.

### F. Philhower's Motion for Summary Judgment as to Parry's Entitlement to the Defense of Bona Fide Error

The defense of bona fide error is an affirmative defense to liability for violations of the FDCPA. The FDCPA provides that no debt collector will be held liable if the debt collector can show "by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."[110]

Philhower moved for summary judgment as to Parry's entitled to "the bona fide error defense with respect to the allegations in paragraphs 12 and 13 of Plaintiff's Amended Complaint."[111] Those paragraphs concern Parry's liability for representing that he intended to call someone from Dr. Maret's office as a witness at trial and for threatening to take the claim to trial though he did not intend to do so.[112] According to Philhower, Parry waived his right to that defense by failing to plead it in his answer to the complaint.[113]

---

[107] Philhower's Summary Judgment Motion at 5, docket no. 33.

[108] Parry's Opposition at 5, docket no. 37.

[109] *Id.*

[110] 15 U.S.C. 1692k(c) (2012).

[111] Philhower's Summary Judgment Motion at 1, docket no. 33.

[112] Amended Complaint at 3–4, ¶¶ 12–13, docket no. 25.

[113] Philhower's Summary Judgment Motion at 2, docket no. 33.

Rule 8(c)(1) of the Federal Rules of Civil Procedure requires that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." As a general rule, a party waives its right to an affirmative defense by failing to raise the defense in its pleadings.[114] However, a party should not be prohibited from asserting an affirmative defense at the summary judgment stage if the other party would not be prejudiced.[115]

Philhower claims that she will be prejudiced if Parry is allowed to assert the defense of bona fide error "because Plaintiff relied on the absence of such defense in formulating its discovery requests, deposition questions, etc."[116] Parry's memorandum in opposition to summary judgment does not address the issue at all. As a result, Philhower's motion for summary judgment is granted. Parry has waived the defense of bona fide error as to claims twelve and thirteen of the amended complaint.

### Remaining Claims

After resolving the summary judgment motions, only two claims remain in the case, both against Parry. First, the claim that Parry's letter, dated November 29, 2012, falsely represented that Parry believed Philhower had certain rights remains in the case. Neither Express's summary judgment motion – in which Parry joined – nor Parry's summary judgment motion addressed that claim. Second, the claim against Parry for threatening to proceed to trial for collection of Dr. Maret's account, though he did not intend to do so, remains in the case.

---

[114] *Ahmad v. Furlong,* 435 F.3d 1196, 1201–02 (10th Cir. 2006).

[115] *Id.*

[116] Philhower's Summary Judgment Motion at 6, docket no. 33.

## ORDER

IT IS HEREBY ORDERED:

1.     Express's motion for summary judgment[117] is GRANTED. There are no claims against Express remaining in the case.

2.     Parry's motion for summary judgment[118] is GRANTED IN PART AND DENIED IN PART:

     a.     Parry's motion for summary judgment as to his liability for overshadowing the disclosures required by the FDCPA is GRANTED.

     b.     Parry's motion for summary judgment as to his liability for misrepresenting the character or legal status of a debt by filing suit is GRANTED.

     c.     Parry's motion for summary judgment as to his liability for falsely representing that he intended to call a witness from Dr. Maret's office is GRANTED.

     d.     Parry's motion for summary judgment as to his liability for threatening to take an action that he did not intend to take is DENIED.

3.     Philhower's motion for partial summary judgment[119] is GRANTED IN PART AND DENIED IN PART:

     a.     Philhower's motion for summary judgment as to Parry's liability for threatening to take an action that he did not intend to take is DENIED.

---

[117] Docket no. 29, filed Sept.17, 2013.

[118] Docket no. 35, filed Nov. 14, 2013.

[119] Docket no. 33, filed Oct. 31, 2013.

      b.     Philhower's motion for summary judgment as to Parry's waiver of the defense of bona fide error with respect to claims twelve and thirteen of the amended complaint is GRANTED.

Signed February 20, 2014.

BY THE COURT

_____
District Judge David Nuffer